UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN JOSEPH DRAGASITS,<br><br>                              Petitioner,<br><br>v.<br><br>PATRIC COVELLO, Warden,<br><br>                              Respondent. | Case No.:  3:21-cv-1459-CAB-MDD<br><br>**ORDER: (1) GRANTING RESPONDENT'S MOTION TO DISMISS (ECF No. 6) AND**<br><br>**(2) DENYING PETITIONER'S MOTION FOR STAY AND ABEYANCE AS MOOT (ECF No. 2)** |

## I.     INTRODUCTION

On August 17, 2021, Petitioner Stephen Joseph Dragasits ("Petitioner" or "Dragasits"), a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his conviction on two counts of shooting at an occupied vehicle and two counts of assault with a deadly weapon. Pet, ECF No. 1 at 2. On the same day, Petitioner also filed a Motion for Stay and Abeyance. Mot., ECF No. 2. The Court issued a scheduling order on the Motion for Stay on August 18, 2021. ECF No. 4. On September 22, 2021, Respondent filed an Opposition to the Motion for Stay and in it, also moved for the Petition to be dismissed. ECF No. 6. Petitioner filed a Reply to Respondent's Opposition to the Motion for Stay on October 26, 2021. *See* ECF No. 8. On

November 18, 2021, the Court issued an Order Requiring Supplemental Briefing from Petitioner on Respondent's Motion to Dismiss. ECF No. 9. The Court gave Dragasits until December 21, 2021 to respond to Respondent's Motion to Dismiss by filing an Opposition "containing specific evidence and facts germane to the statute of limitations, including any specific facts relevant to statutory and equitable tolling." *Id.* at 4. Petitioner failed to file an Opposition.

The Court has reviewed the Petition, Petitioner's Motion for Stay and Abeyance, Respondent's Motion to Dismiss and Opposition to Petitioner's Motion for Stay, Petitioner's Reply, the relevant documents filed in this case, and the legal arguments presented by both parties. For the reasons discussed below, the Court **GRANTS** Respondent's Motion to Dismiss and **DENIES** Petitioner's Motion for Stay and Abeyance as **MOOT**.

## II.  PROCEDURAL BACKGROUND

On May 23, 2013, after a jury trial, Dragasits was convicted of two counts of shooting at an occupied vehicle (Cal. Pen. Code § 246) and two counts of assault with a deadly weapon (Cal. Penal Code § 245(a)(2)). As to count one, the jury found Petitioner personally inflicted great bodily injury (Cal. Penal Code § 12022.7(a)) and discharged a firearm causing great bodily injury (Cal. Penal Code § 12022.53(d)). The jury found true an allegation that Dragasits inflicted great bodily injury (Cal. Penal Code § 12022.7(a)) and personally used a firearm (Cal Penal Code § 12022.5(a)). The jury also found true the allegations that Petitioner used a firearm within the meaning of California Penal Code section 1192.7(c)(8). The court sentenced Dragasits to an indeterminate term of 25 years-to-life plus a determinate term of 11 years 4 months in prison. ECF No. 7-1 at 2, fn. 2.

Dragasits appealed to the California Court of Appeal and his conviction was affirmed on February 6, 2015. *Id.* He then filed a petition for review with the California Supreme Court. *See generally* ECF No. 7-2. On April 29, 2015, the California Supreme Court granted the petition and "deferred" action "pending consideration and disposition of a related issue in *People v. Lowe*, S215727 and *People v. Buza*, S223698." *Id.*

The appeal remained "deferred" until July 18, 2018, when the California Supreme Court transferred the case back to the Court of Appeal to "consider the effect, if any, of recent legislative amendments to the firearm enhancement statutes on Dragasits' sentence." ECF No. 7-3. On October 2, 2018, the appellate court vacated Dragasits' sentence and remanded the case back to the trial court for resentencing. ECF No. 7-4. After Dragasits was resentenced, he appealed again to the California Court of Appeal, which affirmed the judgment on March 19, 2020. ECF No. 7-5. Dragasits did not file a petition for review in the California Supreme Court. He did, however, file a state petition for writ of habeas corpus with the San Diego Superior Court on May 14, 2021, which was denied on June 21, 2021. ECF No. 7-7.

Dragasits filed his federal petition for writ of habeas corpus under 28 U.S.C. § 2254 along with a Motion for Stay and Abeyance in this Court on August 12, 2021. ECF Nos. 1 & 2.

**III.    DISCUSSION**

As discussed above, currently before the Court are Petitioner's Motion for Stay and Abeyance and Respondent's Motion to Dismiss. Petitioner seeks a stay of the proceedings so that he may exhaust his ineffective assistance of counsel claims in state court.[1] ECF No. 2 at 1. Respondent opposes a stay and has also moved to have the Court dismiss the Petition in its entirety, arguing it is untimely under the statute of limitations. ECF No. 6.

---

[1] The exhaustion of available state remedies is a prerequisite to a federal court's consideration of claims sought to be presented in habeas corpus proceedings. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982); 28 U.S.C. § 2254(b). A district court must dismiss a habeas petition that contains both exhausted and unexhausted claims. *Rose*, 455 U.S. at 522. However, a district court may stay a mixed petition containing both exhausted and unexhausted claims so that the petitioner may exhaust his claims in state court without running afoul of the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Rhines v. Weber*, 544 U.S. 269, 273–75 (2005). A district court must stay a mixed petition if: (1) the petitioner has good cause for his failure to exhaust his claims, (2) the unexhausted claims are potentially meritorious, and (3) there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. *Id.* at 278.

In addition to the exhaustion requirement, The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Generally, petitions filed by prisoners challenging noncapital state convictions or sentences must be filed within one year of the judgment becoming final. 28 U.S.C. § 2244(d)(1)(A). Therefore, regardless of whether claims are exhausted or whether a stay would otherwise be appropriate, the Petition may not be considered if it is barred by the statute of limitations. *See e.g.*, *Salcido v. Small*, No. 09-cv-2883-FMC-JWJ, 2009 WL 2486176, at *4 (C.D. Cal. Aug. 10, 2009) ("[S]ince the statute of limitations for petitioner's federal petition has already expired, Petitioner's Request [for Stay] is denied.") As such, the Court will discuss the statute of limitations first.

### A.   Statute of Limitations

Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the date on which: (A) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(A–D). Once a petitioner is notified that his petition is subject to dismissal based on the AEDPA's statute of limitations and the record indicates that the petition falls outside the one-year time period, he bears the burden of demonstrating that the limitations period was sufficiently tolled under statutory and/or equitable principles. *See Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002) overruled on other grounds by *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

#### 1.   Commencement of Limitation Period

The one-year period may commence at "the expiration of the time for seeking [direct] review." 28 U.S.C. § 2244(d)(1)(A). "Direct review" includes the period within

which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). If a petitioner could have sought review by the state court of appeals or the state supreme court, but did not, the limitation period will begin running against him the day after the date on which the time to seek such review expired. *See* Cal. Rule of Court 8.308(a) (providing that appeal from criminal judgment must be filed within sixty days after rendition of judgment or making of order being appealed) (formerly Cal. Rule of Court 31).

Here, Dragasits' direct appeal took a circuitous route through the California courts and as such, determining when Dragasits' conviction became final is not straightforward. His first direct appeal to the California Court of Appeal was decided on February 6, 2015, when the appellate court affirmed his conviction. ECF No. 7-1. Dragasits then filed a petition for review in the California Supreme Court, raising the same claims he had raised in his initial appeal to the appellate court: (1) the trial court erred in denying his motion to suppress DNA evidence based on the Fourth Amendment, (2) his due process rights under *Trombetta/Youngblood* were violated when the prosecutor failed to preserve DNA evidence/the DNA sample was consumed, (3) the trial court erred in refusing to instruct the jury on DNA/blood sample lost and (4) Senate Bill No. 602. *See id.* On April 29, 2015, the California Supreme Court granted the petition for review and "deferred" action "pending consideration and disposition of a related issued in *People v. Lowe*, S215727 and *People v. Buza*, S223698." ECF No. 7-2.

The California Supreme Court decided *Buza* on April 2, 2018, concluding:

> The sole question before us is whether it was reasonable, under either the Fourth Amendment or article I, section 13 of the California Constitution, to require the defendant in this case to swab his cheek as part of a routine jail booking procedure following a valid arrest for felony arson. Because we conclude the requirement was reasonable as applied to defendant, we hold he is subject to the statutory penalties prescribed in Penal Code section 298.1.

*People v. Buza*, 4 Cal. 5th 658, 691 (2018). As for *People v. Lowe*, the state high court

dismissed the petition for review and remanded to the case to the California Court of Appeal on June 27, 2018 "in light of the decision in *People v. Buza* (2018) 4 Cal. 5th 658, 230 Cal. Rptr. 3d 681, 413 P.3d 1132. (Cal. Rules of Court, rule 8.528(b)(1).)" *See People v. Lowe*, 420 P.3d 213, 234 Cal. Rptr. 3d 710 (Cal. 2018).

On July 18, 2018, the California Supreme Court transferred Dragasits' appeal, which by then had been stayed for over three years, to the Court of Appeal "with directions to vacate its decision and to reconsider the cause in light of Senate Bill No. 620 (Stats. 2017, ch. 682) and *In re Estrada* (1965) 63 Cal.2d 740. (Cal. Rules of Court, rule 8.528(d).)" [2] ECF No. 7-3. On October 2, 2018, the Court of Appeal issued its decision on remand. ECF No. 7-4. It again affirmed Dragasits' conviction but vacated his sentence and remanded the case to the trial court for resentencing and to "exercise its discretion under sections 12022.5(c) and 12022.53(h), by deciding whether to strike or dismiss Dragasits's firearm enhancements." *Id.* at 34. The appellate court also directed the trial court to correct a miscalculation of presentence custody credits. *Id.* Upon remand, the trial court found the original sentence to be appropriate and imposed the same sentence of 25 years to life, plus 11 years. *See* ECF No. 7-5 at 3. Dragasits appealed the trial court's decision and on March 19, 2020, the Court of Appeal affirmed his sentence. *Id.* Dragasits' did not file a petition for review of the appellate court's decision.

Because Dragasits did not file a petition for review to the California Supreme Court, the denial of his third appeal on March 19, 2020 is the relevant date by which to determine

---

[2] Senate Bill No. 620 gave trial courts previously unavailable discretion to strike or dismiss firearm enhancements otherwise required to be imposed by Penal Code sections 12022.5 and 12022.53.1 (§ 12022.5(c), as amended by Stats. 2017, ch. 682, § 1; § 12022.53(h), as amended by Stats. 2017, ch. 682, § 2.) There is no dispute that these statutory amendments apply retroactively to cases in which the judgment was not yet final when Senate Bill No. 620 went into effect. *See, e.g.*, *People v. Almanza*, 24 Cal. App. 5th 1104, 1105–06, 1109 (2018); *People v. Arredondo*, 21 Cal. App. 5th 493, 506–07 (2018); *People v. Woods*, 19 Cal. App. 5th 1080, 1090–91 (2018); *People v. Robbins*, 19 Cal. App. 5th 660, 678–79 (2018). As such, Senate Bill No. 620 applied to Dragasits' case because his appeal was pending, and therefore his conviction not final, when Senate Bill No. 620 took effect on January 1, 2018.

when his conviction became final. The Supreme Court has concluded that "when a petitioner does not appeal to the State's highest court, the judgment became final when his time for seeking review with the State's highest court expired." *Gonzalez v. Thaler*, 565 U.S. 134, 148–49 (2012). In California, a conviction becomes final when the time for filing a petition for review has expired. Specifically, a court of appeal decision in criminal cases typically becomes "final" 30 days after it is issued (*see* Cal. Rules of Ct. 8.366(b)(1)), and any petition for review must be filed in the California Supreme Court 10 days after a court of appeal's decision becomes final. Cal. Rules of Ct. 8.500(e)(1).

Therefore, after Dragasits' appeal was decided on March 19, 2020, he had until April 28, 2020 – 40 days after the judgment was affirmed by the appellate court – to file a petition for review. *See* Cal. Rules Ct. 8.366(b)(1) & 8.500(e)(1). That time was extended another 30 days based on an emergency order issued by the California Supreme Court on April 4, 2020, extending the time to file petitions for review because of the public health emergency presented by the COVID-19 pandemic and granting a thirty-day extension for all deadlines in that court, including dates of finality. *See Rowan v. Kirkpatrick*, 54 Cal. App. 5th 280, 292–93 (Cal. App. 2020) (citing emergency orders issued by the Judicial Council pursuant to Rule 8.66,[3] extending filing deadlines falling between March 17, 2020 and May 18, 2020 by 30 days).

---

[3] California Rule of Court 8.66 allows for "tolling or extending time because of public emergency," stating in relevant part:

> (a) If made necessary by the occurrence or change of earthquake, fire, public health crisis or other public emergency or by the destruction of or danger to a building housing a review court, the Chair of the Judicial Council, notwithstanding any other rule in this title, may:
>
> (1) Toll for up to 30 days or extend by no more than 30 days any time periods specified by these rules; or
>
> (2) Authorize specified courts to toll for up to 30 days or extend by no more than 20 days any time periods specified by these rules.

Taking into consideration the emergency order from the California Supreme Court, Dragasits' judgment became final on May 28, 2020, the last day he could have timely filed a petition for review in the California Supreme Court. Thus, absent any tolling, the one-year statute of limitation expired on May 28, 2021. Dragasits constructively filed his federal petition on August 12, 2021,[4] 76 days after the statute of limitation had expired. Accordingly, unless Dragasits is entitled to statutory or equitable tolling of the limitation period, his Petition is untimely.

2. Statutory Tolling

AEDPA's one-year limitations period is tolled under § 2244(d)(2) for the "'time during which a properly filed application for State post-conviction or other collateral review [with respect to the pertinent judgment or claim] is pending.'" *Dictado v. Ducharme*, 244 F.3d 724, 726 (9th Cir. 2001) (quoting 28 U.S.C. § 2244(d)(2)), abrogated on other grounds by *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).

Dragasits filed a petition for writ of habeas corpus in the San Diego Superior Court. A state habeas petition filed before the limitations period begins to run tolls the limitation period. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). While Dragasits' petition was docketed with the superior court on May 20, 2021, it is deemed constructively filed on May 14, 2021 (*see* ECF No. 7-6 at 22), when it was placed in the United States mail. *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003); *see also Hernandez v. Spearman*, 764 F.3d 1071, 1074 (9th Cir. 2014) ("The [mailbox] rule applies equally to a pro se prisoner's filing of a California state habeas petition."). At that point, Dragasits had 14 days left on his statute of limitations.

///

---

[4] The Court applies the "prison mailbox rule" to pro se prisoner petitions, deeming the petition filed on the date the prisoner delivers it to prison authorities for forwarding to the clerk of court. *Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003). Here, Petitioner delivered the petition to correctional officials for mailing on August 12, 2021. ECF No. 1 at 50.

The superior court denied the petition on June 21, 2021 (ECF No. 7-7), at which time the limitation clock restarted. Absent additional tolling, Dragasits then had 14 days from the denial of his state petition, or until July 5, 2021, to timely file his federal petition. Thus, even with statutory tolling, Dragasits' federal petition was filed 38 days late.[5] The Petition is therefore untimely unless Dragasits can show he is eligible for a sufficient period of equitable tolling.

### 3.  Equitable Tolling

A Petitioner is entitled to equitable tolling if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*, 544 U.S. at 418); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) (quoting *Pace*); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) ("When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate.") The petitioner bears the burden of showing that this "extraordinary exclusion" should apply to him. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). The diligence required for purposes of equitable tolling is "reasonable diligence," rather than "maximum feasible diligence." *Holland*, 560 U.S. at 653 (citation and internal quotation marks omitted). The petitioner also must show that "the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances made it impossible to file a petition on time." *Ramirez v. Yates*, 571 F.3d

---

[5] According to the appellate court's docket, it appears Dragasits filed a petition for writ of habeas corpus in the California Court of Appeal on October 25, 2021 in case number D079620. *See* https://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?doc_id=2365170&request_token=NiIwLSEmPkw%2BWyBBSSFNSE1IQEQ6UkxbJCBOXzhTMCAgCg%3D%3D&start=1&doc_no=D079620&dist=41&search=party&auth=yes (visited Jan. 13, 2022). That petition was denied on November 4, 2021. *Id.* This petition does not toll the statute of limitations because an application for state post-conviction or other collateral review filed after the limitations period has ended cannot toll the limitations period. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (Section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed, even if the state petition was timely filed).

993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted). "This is a very high bar, and is reserved for rare cases." *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1077 (9th Cir. 2014)

Equitable tolling determinations are highly fact-specific, and therefore require a flexible, case-by-case approach. *Bills v. Clark*, 628 F.3d 1092, 1097–98 (9th Cir. 2010). If more than one "extraordinary circumstance" is alleged, a petitioner can show that the circumstances together made a timely filing impossible, rather than proving that each factor independently made a timely filing impossible. *Ramirez*, 571 F.3d at 1000.

In his Reply, Dragasits argues that he is entitled to equitable tolling because his appellate counsel erroneously advised him that his federal habeas petition would be due on August 16, 2021. ECF No. 8 at 4–5. He attaches a letter he received from counsel after his appeal was denied. *Id.* at 9. In the letter, dated March 25, 2020, appellate counsel informed Petitioner that the California Court of Appeal had affirmed his conviction and that there was "no legal basis to petition for review from the decision." *Id.* at 9. Counsel then informed Dragasits that he could seek relief in federal court. She stated: "The deadline for filing a federal habeas petition is one year and 90 days from the date the judgment in this current appeal is final. The judgment in this current appeal will be final on May 18, 2020; therefore, the deadline for filing a federal habeas petition would be August 16, 2021." *Id.*

Appellate counsel's calculation of the filing deadline for a federal habeas petition, however, was unfortunately erroneous. It included reference to "one year *and 90 days* from the date of judgment" but those 90 days only apply when a Petitioner is entitled to seek review in the United States Supreme Court. *See Bowen v. Roe*, 188 F.3d 1157, 1158–59 (9th Cir. 1999) (emphasis added). Because Dragasits did not seek review in the California Supreme Court after his third appeal was denied, he was not entitled to petition the United States Supreme Court for a writ of certiorari. The Supreme Court may only hear cases from a state court of last resort, that is, "the highest court of a State in which a decision could be had." 28 U.S.C. § 1257(a); *see also* Sup. Ct. R. 13.1 ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered

by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."); *Costarelli v. Massachusetts*, 421 U.S. 193, 195 (1975) (per curiam). Thus, Dragasits' failure to seek review in the California Supreme Court barred him from seeking a writ of certiorari. As no petition for writ of certiorari could be filed, no additional 90-day grace period for the filing of such a petition is applicable. *See Alarcon v. Marshall*, 188 F. App'x 608, 609–10 (9th Cir. 2006).

In *Miranda v. Castro*, 292 F.3d 1063 (9th Cir. 2002), the Ninth Circuit addressed whether a habeas petitioner's reliance on the erroneous advice of appointed counsel was sufficient to warrant equitable tolling of the one-year statute of limitations on filing a federal habeas corpus petition. In *Miranda*, the petitioner received a letter from his appointed appellate counsel which stated that "[a]t this point my appointment to represent you is concluded," and also included information and forms for the prisoner to file a federal habeas corpus petition. *Id*. at 1066. Unfortunately, rather than informing the petitioner in the letter that his one-year statute of limitations under AEDPA expired on April 23, 2000, counsel informed the petitioner in a likely "typo" that it expired on April 23, 2001. *See id*. Thereafter, the petitioner did not file his federal habeas petition until December 5, 2000, which at that point was fifty-three days late. *See id*. at 1064–65. In arguing for equitable tolling, the petitioner contended that "he relied upon the appointed attorney's advice—which turned out to be erroneous—and that 'but for that reliance [his] petition would have been filed' in a timely manner." *Id.* at 1066.

The Ninth Circuit denied Miranda's request for equitable tolling, noting that the petitioner "had a right to appointed appellate counsel during the course of his direct review—and thus, as he contends, to the 'effective assistance' of that counsel," but the attorney's representation of the petitioner in connection with his direct review had already ended when she wrote the letter. *Id*. at 1067. Thus, although "the attorney generously offered some final thoughts—which apparently included a miscalculated due date, or at least a typo—in a letter after the close of her representation," those thoughts "pertained not

11

3:21-cv-1459-CAB-MDD

to the direct review for which she was appointed, but to habeas relief, for which she was not;" and the petitioner "had no right to that advice." *Id*. at 1067–68. In response to petitioner's argument that "'it may be true that appointed counsel has no duty to advise a client regarding the availability of state or federal habeas relief,' but if a counsel undertakes to offer such advice, 'it must be accurate,' the Ninth Circuit stated that its "precedents foreclose this contention." *Id*. at 1068. The court concluded that "because [the petitioner] had no right to the assistance of his appointed appellate counsel regarding post-conviction relief, it follows that he did not have the right to that attorney's 'effective' assistance, either." *Id*. (citing *Miller v. Keeney*, 882 F.2d 1428, 1431–32 (9th Cir. 1989)).

Based on the record before the Court, there is no evidence to suggest that Petitioner retained appellate counsel as counsel past her appointment through Appellate Defenders, Inc. Because Dragasits did not have the right to the assistance of appellate counsel regarding post-conviction relief, he was not entitled to her "effective assistance." *See Miranda*, 292 F.3d at 1068. Therefore, he is not entitled to equitable tolling of the statute of limitations based on counsel's erroneous advice. *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007) (stating "attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel").

Dragasits also argues he is entitled to equitable tolling of the statute of limitations due to the COVID-19 pandemic. He states that "since March 2020, until a couple months ago, the law library has been closed because of COVID-19." ECF No. 8 at 5. He alleges that even written requests for forms and cases received no reply from prison library staff during that time period. *Id*. at 5. Dragasits states that that because of the COVID-19 pandemic, he needed the assistance of his family "to hire some help with his claims" from someone outside of the prison because the impact of the COVID-19 pandemic inside the prison caused lengthy quarantines and lockdowns. *Id*. He also alleges that he "signed a contract with a paralegal/Legal Document Assistant [LDA] on approximately July 3, 2020" but "due to the COVID-19 prison pandemic, letters and phone calls to the LDA and [his]

sister who was funding th[e] petition" were extremely rare. *Id.* Finally, he states that he wrote a letter to his former trial counsel on December 15, 2020, seeking assistance with preparing his ineffective assistance of counsel claims[6] but received no response. *Id.*

While there are not many cases discussing the issue, most that have addressed it have found that general claims of prison lockdowns and lack of access to the prison law library as a result of the COVID-19 pandemic alone are insufficient amount to the "extraordinary circumstances" required to entitle an inmate to equitable tolling. *See Shephard, v. Asuncion*, No. 21-cv-4147-JWH-E, 2021 WL 6496744, at *10 (C.D. Cal. Nov. 3, 2021) (finding petitioner was not entitled to equitable tolling during alleged "total lockdown" due to COVID-19 between March 2020 and August 2020); *Sholes v. Cates*, No. 1:21-cv-1006-DAD-HBK, 2021 WL 5567381, at *4 (E.D. Cal. Nov. 29, 2021) (concluding prisoner not entitled to equitable tolling during COVID outbreak which caused the law library to be closed "for months" and thereafter open with only limited access); *see also Russi v. Smith*, 20-cv-4580, 2022 WL 118110, at *2 (E.D. Pa. Jan 12, 2022) ("The COVID-19 pandemic does not automatically warrant equitable tolling. . .. The Petitioner must establish that he was pursuing his rights diligently and that the COVID-19 pandemic specifically prevented him from filing his motion.") (citing *United States v. Henry*, No. 17-cr-00180, 2020 WL 7332657, at *4 (W.D. Pa Dec. 14, 2020)); *see also Rush v. Sec'y, Fla. Dep't of Corr.*, No. 21-10218-C, 2021 WL 3134763, at *1 (11th Cir. June 22, 2021) (unpublished) (explaining COVID-19 not an extraordinary circumstance because all prisoners attempting to access legal resources subject to COVID-19 protocols).

Some district courts have recognized that the COVID-19 pandemic could lead to an extraordinary circumstance warranting tolling under certain circumstances. *See e.g.*,

---

[6] Dragasits' letter to trial counsel included questions relevant to making his claims of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 688 (1984). For instance, he inquired about her tactical or strategic reasons for failing to challenge certain testimony from prosecution witness and failure to challenge expert testimony regarding DNA found on shell casings. *See* ECF No. 7-6 at 60–61.

13

*United States v. Marshall*, 2021 WL 3854469 at * 2 (E.D. Ky. August 5, 2021), report and recommendation adopted, 2021 WL 3844749 (E.D. Ky. August 27, 2021) (collecting cases); *see also Hager v. Warden, Ross Correctional Inst.*, 2021 WL 2291319 at * 3 (S.D. Ohio June 4, 2021), report and recommendation adopted, 2021 WL 2670622 (S.D. Ohio June 29, 2021); *United States v. Smith*, 2020 WL 4016242 at *2 (D. Md. July 16, 2020). However, even in cases recognizing that circumstances created by the COVID-19 pandemic *could* amount to "extraordinary circumstances" in some instances, those courts have found that a petitioner seeking tolling on such a basis must still demonstrate fact-specific circumstances related to the pandemic that hindered his ability to timely file a habeas petition. *See Chapman-Sexton v. United States*, 2021 WL 292027 at *3 (S.D. Ohio Jan. 28, 2021), report and recommendation adopted, 2021 WL 982718 (S.D. Ohio Mar. 16, 2021) (observing the court's prior recognition that COVID-19 presented an "extraordinary circumstance" generally but concluding that it did not in that particular case because the petitioner failed to adequately explain why COVID-19 prevented him from timely filing his petition); *Pryor v. Erdos*, No. 5:20-CV-2863, 2021 WL 4245038, at *9 (N.D. Ohio Sept. 17, 2021) (concluding general complaints that COVID-19 prevented access to unidentified legal materials while in prison was insufficient to carry a petitioner's burden of demonstrating that an "extraordinary circumstance" prevented timely filing because petitioner failed to sufficiently explain what additional materials he needed or why lack of access to those materials actually prevented him from timely filing his petition).

Dragasits has failed to provide a sufficiently specific explanation as to how COVID-19 hindered his ability to timely file his federal petition. While he describes general difficulties in accessing the prison library during COVID-19 lockdowns, Petitioner fails to provide facts to show that lack of access to the library "actually prevented" him from filing his federal petition. *See Chapman-Sexton*, 2021 WL 292027 at *3. To the extent Dragasits provides specific facts regarding hindrances to preparing his petition, those difficulties occurred in between July and December 2020. He has not, however, submitted any specific factual or evidentiary support for the claim that prison lockdowns due to COVID-19

prevented him from timely filing his federal habeas petition before it was due on July 5, 2021. *See Miranda*, 292 F.3d at 1065 (stating habeas petitioner has "burden of showing that [the] extraordinary exclusion [of equitable tolling] should apply to him"); *see also Robinson v. Marshall*, 405 Fed. App'x 241, 242 (9th Cir. 2010) (finding equitable tolling unwarranted where petitioner "did not demonstrate how limited access to the library [due to extended prison lockdowns] was the cause of his failure to timely file his petition"). This Court provided Dragasits an opportunity to provide more specific information regarding tolling of the statute of limitations by ordering supplemental briefing "containing specific evidence and facts germane to the statute of limitations, including any specific facts relevant to statutory and equitable tolling" (*see* ECF No. 9 at 4), but Dragasits failed to file a supplemental brief. Accordingly, Petitioner is not entitled to equitable tolling based on alleged COVID-19 lockdowns and/or lack of library access.

In sum, based on the record, the Court finds Petitioner has failed to meet his burden to show he was sufficiently diligent "extraordinary circumstances" made it impossible to file a petition on time. *See Martel*, 751 F.3d at 1077 ("This is a very high bar, and is reserved for rare cases."). Therefore, he is not entitled to equitable tolling.

### 4. Conclusion

For the reasons discussed above, the Court finds that the Petition was filed after the expiration of the statute of limitations and because Dragasits has failed to establish he is entitled to sufficient statutory and equitable tolling to render the Petition timely, the Petition is barred from review. Respondent's Motion to Dismiss is therefore **GRANTED**.

### B. Motion for Stay and Abeyance

Petitioner requests that this Court stay his federal Petition and hold it in abeyance while he exhausts his ineffective assistance of counsel claims in state court. ECF No. 2. However, since the statute of limitations for Dragasits' federal petition has already expired for the reasons discussed above, the Motion is **DENIED** as moot.

///

///

## IV. CONCLUSION AND ORDER

For the reasons discussed above, the Court **GRANTS** Respondent's Motion to Dismiss (ECF No. 6) and **DENIES** Petitioner's Motion for Stay and Abeyance (ECF No. 2) as moot.

Furthermore, the Rules Following 28 U.S.C. § 2254 require the District Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254 (West 2019). A certificate of appealability will issue when the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (West 2019); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005). A "substantial showing" requires a demonstration that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the Court concludes Dragasits has not made the "substantial showing" required to establish that he is entitled to sufficient tolling to render the Petition timely, and therefore a certificate of appealability is **DENIED.**

**IT IS SO ORDERED.**

Dated: January 24, 2022

Hon. Cathy Ann Bencivengo
United States District Judge